UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GARRY L. LEWIS; and G. LEWIS - LOUISIANA, L.L.C. | : : : | CIVIL ACTION NO. |
| VERSUS | : : | JUDGE |
| UNITED STATES; THE UNITED STATES ARMY CORPS OF ENGINEERS; COLONEL MICHAEL CLANCY; and MAJOR GENERAL MICHAEL C. WEHR | : : : : : : | MAGISTRATE SECTION |

**VERIFIED COMPLAINT**

1.

Plaintiffs, Garry L. Lewis (Lewis), individually, and G. Lewis - Louisiana, L.L.C., managed by Garry Lewis, own certain real property near Satsuma, in Livingston Parish, Louisiana. The U.S. Army Corps of Engineers ("Corps") has declared regulatory jurisdiction over some of Plaintiffs' lands under the Clean Water Act ("CWA").  This regulation restricts Plaintiffs' freedom to use and enjoy their lands, such as through normal timber harvesting, water supply utilities, and development for the needs of people of Livingston Parish.  This regulation also allows regulated persons administrative appeal rights on certain Corps actions.  The Corps' actions in declaring regulation over Plaintiffs' lands in this case are arbitrary and capricious, have rendered Plaintiffs' lands virtually useless, and are contrary to the United States Constitution.

**JURISDICTION AND VENUE**

2.

This Court has jurisdiction over this action under the Administrative Procedure Act, 5 U.S.C. §§703, 704 and 706, the Clean Water Act, 33 U.S.C. §1344, Article 1, Section 8, Cause 3

the Tenth Amendment of the United States Constitution, and federal question jurisdiction under 28 U.S.C. §1331. The Administrative Procedure Act has waived sovereign immunity for the counts alleged herein.

3.

This Court is the proper venue because the United States is regulating certain of Plaintiffs' lands from its New Orleans District office, Louisiana, which is where a defendant resides, under 28 U.S.C. §1391(b)(1) and (e), and which office is within the Eastern District of Louisiana.

4.

This Court has authority to grant any equitable form of relief, including declaratory and injunctive relief under 28 U.S.C. §2201, *et seq.*, and/or 5 U.S.C. §703.

**PARTIES**

5.

Plaintiff, Garry L. Lewis, is a person of the full age of majority, residing in Livingston Parish, Louisiana, and is a property owner of certain lands wrongfully regulated by the Corps, which are located in Livingston Parish, Louisiana, within the Middle District of Louisiana. Plaintiff, G. Lewis - Louisiana, L.L.C. is a limited liability corporation, organized under the laws of the State of Louisiana, managed by Garry L. Lewis, which has an interest in the subject property (collectively "Plaintiffs", unless otherwise referred to individually). The adverse effects of the Corps' regulation from the Corps New Orleans District exist here and harm Plaintiffs. Plaintiffs dispute the Corps' regulation of their lands.

6.

Defendants are the United States, acting through the U.S. Army Corps of Engineers in the New Orleans District in Louisiana and the Mississippi Valley Division in Vicksburg, Mississippi,

and commanded respectively by Colonel Michael Clancy and Major General Michael C. Wehr, sued in their official capacities. The United States has charged these agencies and agents with authority, *inter alia*, to regulate wetlands, issue permits, issue orders, issue jurisdictional determinations and hear administrative appeals regarding Corps' permits and regulatory jurisdiction.

**FACTS**

7.

Plaintiffs own, *inter alia*, approximately forty (40) acres of land south of Spring Ranch Road, on and north of Milton Lane, in Section 4, Township 7 South, Range 4 East, located in Livingston Parish, Louisiana. This land consists of two adjacent, approximately twenty-acre, tracts of land (the "Property"), which are the focus of this complaint.

8.

This Property is mainly timberland, which Plaintiffs seek to use.

9.

Plaintiffs retained a wetlands consultant, Raymond Plauche, to seek a Corps' regulatory decision on the Property in what is called a jurisdictional determination. An approved jurisdictional determination finds lands are either jurisdictional under the CWA, in whole or in part, or not, usually for a period of five years. This jurisdictional determination was initially requested of the Corps here by Plaintiffs in August, 2013. The Corps did not act on this request, and it was re-submitted by plaintiff Lewis to the Corps in July, 2015.

10.

Due to delays in obtaining a jurisdictional determination on the Property, plaintiff Lewis met with the New Orleans District Commander (then a Colonel Hansen) and his staff on October

5, 2015. The District Commander orally instructed his staff to proceed with the jurisdictional determination for this Property and other nearby tracts as next to "top priority."

11.

Despite the meeting, the approved jurisdictional determination by the Corps was not issued for the Property until August, 2016, some three years after the initial request. The jurisdictional determination (MVN 2015-01591-SK) found a portion of the forty acres of the Property to be regulated wetlands and waters under 33 U.S.C. §1344. However, the Corps did not delineate or describe precisely which parts of the forty acres were wetlands, but rather only vaguely established that a general percentage of the forty acres were wetlands. The percentages were 22 percent of the western tract and 38 percent of the eastern tract. This vague percentage determination over-regulates the Property and is virtually useless to a landowner in hopes of avoiding work in wetlands because the wetlands arbitrarily were not delineated pursuant to official Corps policy (Corps Regulatory Guidance Letter No. 08-02). The Corps had previously precisely delineated wetlands on other properties of the plaintiffs. The vague percentage determination is arbitrary and capricious, contrary to law and regulatory guidance, violates due process, is an unconstitutional taking, and displays Corps bias against Plaintiffs.

12.

Corps regulations at 33 C.F.R. §331 allows a person to administratively appeal an approved jurisdictional determination such as the ones the Corps issued on this Property. Plaintiff Lewis filed an administrative appeal of the jurisdictional determinations timely with the Mississippi Valley Division in Vicksburg on September 30, 2016. *See* Exhibit 1.

13.

On October 24, 2016, the Mississippi Valley Division's Review Officer, then Jeremy E. Stokes, wrote to appellant Lewis' (a plaintiff herein) administrative appeal agent (Mr. Millan) and stated that the New Orleans District had concerns about the request for appeal regarding "new information". This alleged "new information" included, but is not limited to, photographs taken of local area floods earlier on August 13 and 14, 2016, a newspaper article about the same historic flooding in the Baton Rouge area, and several visual aid diagrams or maps. Some of this information showed that the so-called "wet" portion of the Property did not flood during the historic flooding of the area in 2016.

14.

Due to change-over of Division review officers, another neutral review officer was appointed from the Great Lakes and Ohio River Division, Jacob A. Siegrist to handle the appeal. On November 23, 2016, Mr. Siegrist contacted appellant's appeal agent and the Corps about redacting "new information" from the request for appeal. On November 23, 2016, the agent responded that Mr. Stokes had already removed the "new information" from the request for appeal, but that "we [plaintiff Lewis and the agent] do not waive any rights". Appellant's agent further verified that appellant had submitted a tolling agreement and after-the-fact permit application for previously alleged "unauthorized" silviculture work on the Property, previously halted by the Corps, as was requested by Mr. Stokes. Mr. Siegrist later responded to Lewis's agent on December 5, 2016, by stating that the appellant or the Corps "…may interpret, clarify or explain issues and information contained in the administrative record…."

15.

On December 15, 2016, Mr. Siegrist again wrote to the agent asking whether the appeal should proceed or be withdrawn.  On December 16, 2016, appellant's agent responded that the appeal should proceed, but that prior correspondence to Mr. Stokes, former review officer, dated October 26, 2016, noting objections and exceptions to the Corps' removal of certain "new information" still stands.  *See* Exhibit 2.  Those exceptions are renewed herein.

16.

On January 12, 2017, Mr. Siegrist again wrote to appellant's agent and attached a copy of a January 6, 2017, letter, signed by General Wehr, revealing that the "new information" was withdrawn and that the appeal process would continue.  Appellant's agent responded to Mr. Siegrist on January 12, 2017, stating that "my referenced correspondence [October 26, 2017] speaks for itself" (brackets added).  *See* Exhibit 2, *supra*.  Dates for an appeal conference were also noted in Mr. Siegrist's correspondence.

17.

On January 27, 2017, Mr. Siegrist corresponded to the parties, announced protocol, and stated that the appeal conference was scheduled for February 22, 2017, at the Livingston Parish Library main branch.

18.

On January 12, 2017, Mr. Siegrist again wrote to the parties and attached an appeal conference agenda.  On or about January 27, 2017, the District's administrative record was provided to the parties.

19.

The appeal conference meeting and site investigation by Mississippi Valley Division was accomplished by Mr. Siegrist on February 22, 2017.

20.

Mr. Siegrist provided a draft Memorandum for Record of the appeal conference for the parties to comment upon. Appellant's agent commented thereon on March 31, 2017. Mr. Siegrist then finalized the Memorandum for Record of the appeal conference on April 7, 2017, with appellant's comments attached thereto. *See* Exhibit 3. On information and belief, the Corps' administrative record may avoid using that memorandum and that record would be inadequate if so, violating due process.

21.

On August 31, 2017, General Wehr corresponded to appellant Lewis's agent with a decision document dated September 1, 2017, recognizing merit in part to the appeal on the issue of no wetland "significant nexus", a regulatory jurisdictional requirement. *See* Exhibit 4. The agent was advised that the matter was remanded to the District for reconsideration and documentation.

22.

On November 3, 2017, the District corresponded to Lewis's agent and affirmed its prior jurisdictional determinations of August 26, 2016, but with merely revised jurisdictional determination forms thereon. The revised decision still recognized the same vague initial percentage from 2016 of jurisdiction over the two tracts of the Property. *See* Exhibit 5.

23.

The vague percentage determination provided within the initial and revised approved jurisdictional determination harms Plaintiffs.  The Corps' failure to precisely identify the limits of the claimed jurisdictional wetlands necessarily causes Plaintiffs to expend additional sums of money and substantial time to proceed with any planned usage of the Property.  Those sums include compensatory mitigation fees, likely totaling $460,000.00 based upon the amount of claimed wetlands[1], as well as permit fees, attorney fees, and consultant fees, estimated at $200,000.00.  These expenses would not have been incurred had the Corps provided a proper jurisdictional determination, in that Plaintiffs could have avoided and/or minimized any wetland disturbance if those areas were precisely identified.  Serious constitutional flaws in the federal jurisdictional basis were supposedly eliminated by simple form revisions.

**ARBITRARY AND CAPRICIOUS AGENCY ACTION**

24.

Reiterating the foregoing, the Corps' November 3, 2017, approved jurisdictional determinations over the Property on remand are arbitrary and capricious and contrary to law and the United States Constitution under the Administrative Procedure Act.  5 U.S.C. §706(2).  This administrative decision is a final agency action under *United States Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813-14 (2016), without other adequate remedies before a court.

---

[1] The current Defendant requirements provide that Plaintiffs pay mitigation on the disputed and undifferentiated wetland acres of 22 percent for one twenty-acre parcel and 38 percent for the other twenty-acre parcel. Under those circumstances, at the current estimated rate of $40,000.00 per acre mitigation, Plaintiffs must pay to use these disputed and undifferentiated approximately 12 acres on the Property in the amount of $460,000.00.  Under those requirements (completely apart from permit, legal and consultant fees and regulatory and other delays), $460,000.00 becomes not just a deprivation of a right but arguably amounts to a taking, temporary or permanent, as a condition for Plaintiffs to use Plaintiffs' own land.

25.

The Corps' finding of wetland and other water jurisdiction in Exhibit 5, *supra*, is arbitrary and capricious and an abuse of discretion, contrary to law, and must be set aside. The reasons for such assertions include, but are not limited to, the following:

A.  The District arbitrarily altered information or added new information beyond the Division remand solely on "significant nexus" of September 1, 2017. These include changing wetland acreages, changing dates of field trips, changing linear footage and width of non-wetland waters (ditches), changes to drainage areas from 170 acres and 1,297 acres, respectively, to 55 acres, adding references to mapped soils, adding ordinary high water mark indicators, adding references to pine flatwoods and drift lines, correcting data sheets, adding 2006 aerial photographs and 2014 Google Earth photographs and adding alleged new tidal data from the Amite River. On information and belief, no new Corps field trips or scientific studies were performed on the site.

B.  However, the District arbitrarily did not consider or discuss during its remand from the Division other relevant information provided by Plaintiffs such as a report on the adjacent 19-acre Milton Lane tract submitted to the District on October 31, 2016, by Plaintiff's consultant, ELOS, about no "significant nexus" and about non-flooding photographs of the general area from August, 2016. *See* Exhibit 6. The Corps arbitrarily picked and chose what information it used on remand and failed to consider all relevant factors in the remand. For instance, the District, on its own, without instruction from Division, on information and belief, arbitrarily added some new supposedly tidal or backwater information (from October, 2017), from the Amite River to its remand record on this matter.

C.  The District lacks substantial information on its arbitrary pollutant trapping and flow determinations for the site to Colyell Bay some ten to fifteen miles distant. On information

and belief, there is no dye test or substantial data to support the Corps' finding that sediment will flow ten to fifteen miles from the Property to a bay and not be deposited or dissipated along the way.

  D. The District also failed to consider their admitted drainage area in the 2016 appeal conference was well shy of the bay, some fifteen miles away from the Property. The bay is the proposed traditional navigable water that is alleged by the Corps to have a "significant nexus" with the two Property tracts in question. Therefore, the bay is miles beyond the reach of any nexus these two tracts of Property may have to other waters in this case. *See* Exhibit 3, *supra*, the Memorandum for Record by Mr. Siegrist, at ¶¶ 8j and 8h, ELOS' diagrams, and pages 6 and 7 of appellant's meeting notes attached thereto. The District actually reduced the drainage areas on remand in the revised approved jurisdictional determinations. Furthermore, the two intermittent or ephemeral drainage ditches referred to as non-relatively permanent waters by the Corps limit their reach under 2007 Corps/U.S. EPA guidance to their confluence with Colyell Creek, still some ten miles from the bay. This gap fails the so-called "significant nexus" test in the concurring opinion of Justice Kennedy in *Rapanos v. U.S.*, 547 U.S. 715, 780 (2006). The smaller or insignificant "nexus" reach, miles short of the bay, is illustrated at green marks on the ELOS diagram at Exhibit 3.

  E. The District and Division failed to delineate on-site wetlands precisely and is arbitrary and capricious. The Corps still uses vague percentages only, which is of no assistance to an owner trying to avoid wetland impacts. The Corps' failure here does not comply with Corps Regulatory Guidance Letter No. 08-02 ("RGL 08-02"), which defines Jurisdictional Determinations and provides the rules for Corps' employees regarding those determinations. That Corps' guidance provides that "[a]n approved JD precisely identifies the limits of those waters on

the project site determined to be jurisdictional under the CWA/RHA." See RGL 08-02, ¶ 2. Further, that "[i]f wetlands or other water bodies are present on a site, an approved JD for that site will identify and delineate those water bodies and wetlands that are subject to the CWA/RHA jurisdiction, and serve as an initial step in the permitting process." See RGL 08-02, ¶ 2(d). The Corps' determinations here cannot be used in the initial step of the permitting process as they do not identify the wetlands for which a permit would be needed if determined that such use was necessary. If the Corps cannot/will not delineate wetlands it should not regulate a site.

F. The District and Division's exclusion of visual aids from the appeal (e.g., photographs, diagrams, and so forth), as "new information" on appeal or remand, is arbitrary, capricious, and is a denial of procedural due process. Though this action is not a money claim, Plaintiffs' protected property interests include, but are not limited to, loss of timber revenue; loss of Property related purchase costs, loan interest costs, engineering costs, infrastructure costs, and legal costs; lost revenues from a sales standstill; diversion of private funds to the Property to offset the sales standstill; and a temporary taking of private property rights.[2] Plaintiffs have been deprived of full use and enjoyment of the Property, including some timber harvesting, for years due to defendants' regulatory delays in the jurisdictional determination process. Plaintiffs have a

---

[2] Plaintiffs have expended significant sums in reasonable anticipation of land use on the Property delayed by Defendants, first for approximately 400 residential units, engineered and approved specific to this site. All of the legal expenses and engineering expenses associated with the plans have been lost, and will need to be redrawn and submitted at costs exceeding $100,000.00. The engineering and legal expenses also were incurred in "approving the land use" by Livingston Parish for such residential units. Subsequently, Plaintiffs incurred significant expense in attempting to use the site for temporary flood housing which has also been lost due to Defendants' regulatory delays and denials. The land value itself, lost to Plaintiffs based upon land sales in the immediate area is $100,000.00 per acre, or four million dollars ($4,000,000.00). Ignoring the 400 residential rent pro forma established net annual income, after debt service and construction for Plaintiffs, of approximately two million dollars ($2,000,000.00), the local community has also lost jobs which also impacts local land use. The delays for three years, on land value alone at three percent interest thereon, is $360,000.00. Furthermore, the jurisdictional determination is a predicate for the defendants 404 permit process for the Property, which now requires compensatory wetland mitigation.

right to rebut the Corps' jurisdictional allegations with evidence, exhibits and clarification, but which rebuttal was substantially removed by the Corps from the administrative appeal, over the appeal agent's objections.  Furthermore, much of that same information (*see* Exhibit 6 in subparagraph B, above) from an adjacent site on non-flooding (and more) was in possession of the District during the remand from Division but was arbitrarily ignored.  Thus, the Corps' administrative record in this case is likely inadequate.

G.     The District failed to follow regulatory procedures on appeal remand at the third sentence of 33 C.F.R. §331.10(b), that if the review of the administrative record by the District has narrow effects, parties to the appeal would be given 15 days of notice to provide supplemental comments.  The remand in this case was narrow to the "significant nexus" issue only, but neither plaintiff Lewis nor his agent received such notice.  The remand thus denied Plaintiffs of procedural due process again (*see* F, above) and is arbitrary and capricious.  A comment on insignificant nexus could have been supplied by Plaintiffs, and at least the information mentioned above in Paragraphs B and F should now be considered by the Court.

H.     The Corps' failure to delineate the wetlands on the Property is contrary to the principles of the CWA and the applicable 1990 Army/EPA Memorandum of Agreement regarding mitigation.  *See* Memorandum of Agreement Between the Department of the Army and the Environmental Protection Agency, The determination of Mitigation under the Clean Water Act Section 404(b)(1) Guidelines ("1990 MOA"), https://www.epa.gov/cwa-404/memorandum-agreement.  The 1990 MOA is purposed with complying with the intent of the CWA relative to wetlands by establishing a "Mitigation Sequence", and provides that the "Corps will strive to avoid adverse impacts and offset unavoidable adverse impacts to existing aquatic resources".  *See* 1990 MOA(II)(B).  The 1990 MOA Mitigation Sequence dictates that "avoidance" of wetlands is the

primary thrust of the CWA permit program.  This is followed by, when avoidance is not possible, "minimization" or finally as a last resort "compensatory mitigation".  *See* 1990 MOA(II)(C)(1-3).  The jurisdictional determination provided here operates in complete opposition to these agreements, guidelines, and the CWA by eliminating Plaintiffs' ability to plan their use of the Property in order to first avoid, or second minimize, wetland disturbance.  Plaintiffs are here coerced by the Corps to proceed with a planned fully compensatory mitigation scheme as no alleged jurisdictional wetlands have been precisely identified.  Further, these percentages used, effectively over-regulate the "wet" and dry areas of the Property to one hundred percent, which is beyond Corps' regulatory jurisdiction.

I. District regulatory personnel are biased against Plaintiffs.  On information and belief, Corps' personnel have acted purposefully and contrary to Corps' guidelines through delaying three years in providing a jurisdictional determination, intending to and causing substantial financial damages to Plaintiffs through that delay.  *See* FN #2, *supra*.  Those personnel then issued the determination using vague percentages, knowing this would cause Plaintiffs to incur additional future delay damages and direct financial harm through mitigation costs, as the form of the determination forces Plaintiffs to proceed with 404 permitting and compensatory mitigation costs instead of avoidance.  This intent is shown through Corps' actions in refusing to enforce CWA violations and unauthorized/unpermitted filling of wetlands on contiguous land tracts owned by others.  Further, the Corps' section chief who personally participated in these determinations commented on the aged practice of issuing vague percentage determinations, saying "[t]his gives me heartburn because there is no opportunity for avoidance."  He subsequently issued such a determination here, knowing the added unnecessary damage it would have on Plaintiffs and the alleged wetlands.

## COMMERCE CLAUSE

26.

Reiterating the foregoing, Article 1, Section 8, Clause 3 of the United States Constitution gives Congress the power to "regulate commerce with foreign nations and among the several states, and with Indian tribes".

27.

The Supreme Court in *Solid Waste Agency v. United States Army Corps of Eng'rs*, 531 U.S. 159, 172-74 (2001), effectively held that the channels of commerce test supports federal regulatory jurisdiction under the CWA and rejected the cumulative effects of local activity test due to its concerns over land use control.  This holding leaves the Corps with two main ways to regulate wetlands; a permanently following water test and/or at one time a "significant nexus" test.  The plurality opinion in *Rapanos*, *supra*, at 739, stated the CWA's "waters of the United States" only includes those "…relatively permanent, standing or continuously flowing bodies of water…[but] does not include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall".  At least both tests should be met for regulatory jurisdiction.  *U.S. v. Lucas*, 516 F.3d 316, 326 (5th Cir. 2008), *cert*. *denied* (2008).  The District and Division did not use this permanently flowing water test in this case.  They only used the "significant nexus" test of the concurring opinion by Justice Kennedy.  Justice Kennedy, regarding a "significant nexus" test in *Rapanos* at 780, rejected a "speculative or insubstantial" effect on water quality as creating regulatory jurisdiction.  He further stated that "mere hydrologic connection" should not suffice for jurisdiction in all cases.  *Id*. at 784.  Here, besides examining wetland characteristics (vegetation, etc.), the Corps used a handful of visits and observations on-site of sporadic flow.  The Corps lacks a detailed off-site study of similar wetlands, their

delineation and assessed ecological values, and overall ditch and creek flow.  The Corps lacks a required finding of a clear "reach" of any significant nexus between the forty-acre site and a bay some fifteen miles distant and well outside the site's small drainage basin.  These flaws render the subject jurisdictional determinations arbitrary, capricious, and insubstantial under the Commerce Clause as applied herein and under the Administrative Procedure Act.

28.

A "significant nexus" cannot legally stretch beyond the primary protection of traditionally navigable waters (i.e., Colyell Bay), and its surrounding wetlands, to some fifteen miles inland through an ephemeral ditch connection only with the Property located in a small drainage basin.

29.

The Corps/EPA 2007-8 guidance on the issue of "significant nexus" following *Rapanos*, a judicial ruling not a statute, is not entitled to judicial deference.  The guidance is not a formal rule under the Administrative Procedure Act or the Clean Water Act, and should not be legally binding on the applicants or this Court.  Such guidance cannot override the Commerce Clause.  Further, pursuant to Executive Order 13778 (February 28, 2017), the Corps and U.S. EPA currently have rejected a "significant nexus" test during their revised rule-making under the CWA and that test should be judicially ignored under the Commerce Clause.  If not ignored, then per *Lucas*, *supra*, both tests should be evaluated and met.

30.

The wetland jurisdictional determinations in this case should be set aside.

## TENTH AMENDMENT

31.

Reiterating the foregoing, the Tenth Amendment of the United States Constitution provides the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

32.

On August 11 through 15, 2016, Livingston Parish suffered the worst flood in Louisiana history. A low pressure system stalled dumping record rainfall and damaging approximately one hundred thousand homes at a cost of billions of dollars. Livingston Parish was reported as the hardest hit by the storm with 86.6 percent of homes in flooded areas. Over thirty thousand residents were reported rescued by the U.S. Coast Guard, the National Guard, and others. The center of Livingston Parish, however, did not flood. This is the area where the forty acres of Property are located. A portion of the Property could have been used for emergency homes, which the Corps has stopped.[3] This regulation affects Livingston Parish's and Plaintiffs' land use needs.

33.

The Corps' vague "percentage" over-regulation of Plaintiffs' Property as applied herein also constitutes land use control beyond the federal government's enumerated powers.

34.

Furthermore, the primary responsibility of the Louisiana Department of Agriculture and Forestry, Office of Forests under La. R.S. 36:628.F, as amended, is to, *inter alia*, promote sound

---

[3] Multiple permit applications have been made, including: 10/29/2015 to install water line; 10/13/16 after-the-fact silviculture activity; 10/25/16 to provide emergency flood housing; September 2016 FEMA-4277-DR-LA. flood housing.

forest management practices and enforce timber-related laws. Louisiana's forests cover 48 percent of the state on public and private lands. This renewable resource provides raw material for Louisiana's second-largest manufacturing employer, the forest products industry. Forests also provide habitat, recreation and scenic beauty. http://www.ldaf.state.la.us/forestry/.

35.

The Corps' halting through a cease and desist order and notice of violation in 2015-2016, of Plaintiffs' silviculture best management activity, which was approved on the Property July 14, 2015 by the State of Louisiana, constitutes regulation of local activity beyond the federal government's enumerated powers. The Corps' above enforcement actions based upon U.S. EPA "concurrence" of November 25, 2015, are final agency actions under *Sackett v. E.P.A.*, 132 S. Ct. 1367 (2012), without any other adequate remedy in court for Plaintiffs. These actions are the culmination of agency action on no silviculture exemption here under the CWA and have effects of halting Plaintiffs' silviculture, exposing them to enforcement, and making future 404 permit efforts far more burdensome.

36.

The foregoing regulation as applied herein interferes with state sovereignty and upsets the federal-state balance of power.

37.

The foregoing over-regulation in fact injures Plaintiffs. *See*, *Bond v. U.S.*, 131 S. Ct. 2355, 2366-67 (2011).

38.

The unconstitutional regulation of the Property should cease and be set aside under the Administrative Procedure Act.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectively request:

1. A mandatory or prohibitory injunction against the Corps from regulating Plaintiffs' Property in this case under the Clean Water Act;

2. A declaration that the approved jurisdictional determinations on remand from administrative appeal in this case are excessive and be set aside as arbitrary, capricious and contrary to law and the United States Constitution;

3. Grant such other relief to which the plaintiffs may be entitled.

Respectfully submitted,

/s/ Drake L. Lewis
Drake L. Lewis (#35885)
17457 West McLin Rd., Suite A
Livingston, Louisiana 70754
Telephone:  (225) 686-1111
Facsimile:  (225) 686-7584
dlewis562000@gmail.com

Tony Clayton (#21191)
3741 La. Highway 1 S
Port Allen, Louisiana 70767
Telephone:  (225) 344-7000
Facsimile:  (225) 383-7631

Joshua M. Lewis (#33244)
1720 Kaliste Saloom Road, Suite A-6
Lafayette, Louisiana 70508
Telephone:  (337) 552-2057
Facsimile:  (337) 341-8162

*Attorneys for Plaintiffs*
*Garry L. Lewis and*
*G. Lewis-Louisiana, L.L.C.*